# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN DAVID DICKEY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 17-07733 AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff seeks review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the disputed issues. This matter is now ready for decision.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income in 2013, alleging that he became disabled on November 30, 2011. Plaintiff's claims were denied initially and on reconsideration. (Administrative Record ("AR") 102-113, 116-121.) A hearing was held before an Administrative Law Judge ("ALJ") on January 6, 2016, at which Plaintiff, who was represented by counsel, testified.

(AR 33-58.) In addition, the ALJ propounded interrogatories to a Vocational Expert ("VE") and Plaintiff did not object to either the questions or the VE's responses. (AR 17, 229, 238-245.)

The ALJ issued a decision on March 2, 2016, finding that Plaintiff suffered from the following severe impairments: bilateral knee disorders, back sprain, and obesity. (AR 20.) The ALJ determined that Plaintiff retained the RFC to perform a limited range of light work. (AR 21.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff was able to perform his past relevant work as a telephone solicitor and security guard. (AR 25-26.) Alternatively, the ALJ adopted the VE's testimony that Plaintiff could perform other work existing in significant numbers in the national economy, including the jobs of food and beverage order clerk, lens inserter, and optical assembler. (AR 27.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 27-28.) The Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 1-6.)

**DISPUTED ISSUES**

1. Whether the ALJ properly evaluated Plaintiff's subjective complaints.
2. Whether the ALJ properly considered the effects of Plaintiff's obesity on his ability to work.
3. Whether the ALJ erred in rejecting the opinions of the State agency physicians.
4. Whether the ALJ erred in finding that Plaintiff could perform his past relevant work or other work existing in significant numbers in the national economy.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ.").

## DISCUSSION

**I.     The ALJ provided legally sufficient reasons for discounting Plaintiff's subjective complaints.**

Plaintiff testified that he was unable to work due to pain in his knees and back. According to Plaintiff, any movement was "exhausting." He estimated that he was able to stand for only one to two minutes at a time, sit for only five to ten minutes at a time, walk only half a block, and lift eight to ten pounds. (AR 52, 54-56.) After sitting for a while, Plaintiff had difficulty focusing due to pain. (AR 52-53.) Plaintiff spent most of the day on the couch in a semi-reclining position, and he needed to shift positions, lie down, and elevate his legs. (AR 54-56.) Plaintiff explained that although his doctor did not prescribe a cane, it was recommended, and Plaintiff used one whenever he left the house. (AR 53-54.)

In addition, Plaintiff testified that his orthopedic surgeon recommended knee replacement surgery, but only if Plaintiff reduced his weight to below 250 pounds. (AR 56.) Plaintiff estimated that he weighed between 350 and 360 pounds. (AR 52.) Finally, Plaintiff mentioned that his doctor recommended that Plaintiff take up water aerobics, but he had been unable to afford it. (AR 56.)

**Relevant Law**[1]

Where, as here, a claimant has presented evidence of an underlying impairment and the record is devoid of affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's subjective symptom statements must be "specific, clear and convincing." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 345-346 (9th Cir. 1991) (en banc)).

Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

**Analysis**

The ALJ provided the following reasons reasons for finding Plaintiff's subjective complaints not fully credible.

**1. Plaintiff's allegations were inconsistent with the objective medical evidence.**

The ALJ considered the positive clinical and diagnostic findings and concluded that although they showed that Plaintiff suffered from a severe knee

---

[1] Social Security Ruling 16-3P, which became effective March 28, 2016 does not apply to this case. *See* SSR 16-3P, 2017 WL 5180304, at *1.

4

impairment, back impairment, and obesity, they were not consistent with Plaintiff's allegations of disabling pain and exertional limitations. (AR 22-24.)

In summarizing the medical evidence, the ALJ began by noting that x-rays from June 2008 (approximately three and a half years prior to Plaintiff's alleged date of onset) showed moderate degenerative changes bilaterally with possible loose bodies within the right knee joint, bilateral osteoarthritis worse on the right than the left and primarily in the medial compartment, and no definite knee effusion. (AR 266, 268.)

The ALJ noted that Plaintiff next complained of knee pain in July 2013, when Plaintiff appeared at for an initial visit at Lancaster Family Urgent Care. Physical examination by physician's assistant ("P.A.") Ramon Medina showed crepitus but no edema. Plaintiff was prescribed Tramadol. (AR 249-250.) At a follow up appointment in October 2013, P.A. Medina recommended nutrition counseling and weight management. Plaintiff requested referral to an orthopedic surgeon, and P.A. Medina referred him to Nitin A. Shah, M.D. (AR 252-253, 264.)

In November 2013, Dr. Shah examined Plaintiff. Dr. Shah's treatment notes reflect crepitation, tenderness, painful range of motion, and McMurray's test causing discomfort but no ligamentous instability. Dr. Shah ordered an MRI scan. (AR 263.)

The December 2013 MRI of Plaintiff's right knee revealed chronic tear of the anterior cruciate ligament, severe medial compartment osteoarthrosis with complex degenerative tearing maceration of the 1 medial meniscus diffusely, multiple intra-articular bodies noted in the Baker's cyst, and small suprapatellar effusion and synovitis. An MRI of the Plaintiff's left knee showed severe medial compartment osteoarthrosis with complex degenerative tearing maceration of the body and posterior horn medial meniscus, chronic tear of the anterior cruciate ligament, and moderate lateral compartment osteoarthritic changes. (AR 254-257.)

In January 2014, after reviewing the MRI results, Dr. Shah diagnosed Plaintiff with bilateral osteoarthritis. In his treatment notes, Dr. Shah stated: "conservative

treatment [is] recommended." He prescribed a hinged knee brace and Naprosyn – a non-steroidal anti-inflammatory drug. Dr. Shah also discussed the option of a Synvisc injection, but Plaintiff did "not wish to undergo any injection at the present time." (AR 258.)

In August 2014, Plaintiff saw his primary care physician and complained of bilateral knee pain "since 1980s." (AR 278.) Examination revealed antalgic gait, decreased extension, and tenderness. Lachmann's test, posterior drawer test, and MacMurray's test were all negative. Sensation was normal in the bilateral lower extremities. Bilateral extremity strength was 5 out of 5 except quadriceps and hamstring muscles were 4 out of 5 due to pain. Reflexes were normal. Notes indicate that Plaintiff ambulated with a straight cane. Plaintiff was prescribed Norco (a narcotic pain reliever) and physical therapy was recommended. (AR 278-279.) Plaintiff's health insurance plan approved physical therapy for August 2014 through December 2014. (AR 273.) Nevertheless, as the ALJ noted, there was no indication in the record that Plaintiff ever attended physical therapy. (AR 23.)

Plaintiff saw his primary care physician several more times in the following year. The clinical findings from these visits were similar to those from August 2014. Plaintiff denied side effects from his pain medication, and he was given refills. Physical therapy was again recommended. (*See* AR 280-283, 306-307.) As the ALJ noted, during his August 6, 2015 annual physical, Plaintiff reported that he was doing "ok" and his musculoskeletal examination was normal. (AR 302-305.)

The ALJ also noted that Plaintiff reported both knee and back pain when he saw his primary care physician on August 21, 2015. The findings from Plaintiff's knee examination were the same as in prior visits. With regard to Plaintiff's back, examination showed decreased range of motion, positive Faber's test, and tenderness. Straight-leg-raising-test was negative, and facet loading was negative bilaterally. Plaintiff reported that Norco "minimally helped," and he was prescribed Percocet instead. (AR 305-308.)

With regard to Plaintiff's obesity, the ALJ noted that given Plaintiff's weight of 358 pounds and height of 74.5', Plaintiff's body mass index (BMI) was 45.34. (AR 23-24 [citing AR 249].) Plaintiff's BMI placed him at Level III obesity, which the ALJ acknowledged was considered "extreme," and he was therefore at the greatest risk for developing obesity-related impairments. (AR 24 n. 2.)

As set forth above, the objective evidence, including the MRI scan and other clinical findings, showed that Plaintiff suffered from severe bilateral osteoarthritis in his knees, a back impairment, and obesity. (AR 278-279, 282-283, 303, 305-308.) Nevertheless, no objective medical evidence indicated that Plaintiff's impairments precluded him from standing more than one or two minutes, sitting more than ten minutes, or lifting more than ten pounds. Similarly, nothing in the medical record indicated that Plaintiff was likely to become exhausted from "any kind of movement," as he alleged. Thus, whether or not a different interpretation of the evidence was possible, the ALJ rationally could conclude that the objective clinical findings did not support Plaintiff's allegations of pain and functional limitations. *See Orn*, 495 F.3d at 630 (ALJ decision must be upheld where evidence is susceptible of more than one rational interpretation).

The ALJ also found that there was no objective evidence supporting Plaintiff's testimony that he required a cane. The ALJ acknowledged that the record reflected that Plaintiff had been using a cane from August 2014 to August 2015 and that his treating physician recommended continued use. (AR 23-24.) However, the ALJ explained that Dr. Shah did not observe Plaintiff using a cane nor did he recommend one. The ALJ found Dr. Shah's records more persuasive. (AR 24, 258, 263, 277.)

The ALJ's interpretation of the record is a rational one. Plaintiff argues that Dr. Shah's findings and the MRI results "supported" his use of a cane. (ECF No. 20 at 12.) But evidence that Plaintiff believes supports his cane use is not the equivalent of evidence that a physician has prescribed a cane or otherwise opined that Plaintiff needs a cane to ambulate. There is no dispute that Dr. Shah did not prescribe,

7

recommend, or mention a cane. Furthermore, the ALJ took Plaintiff's cane use into consideration by including the need for periodic use of a cane for balance in Plaintiff's RFC. (AR 21.)

In sum, the ALJ's summary of the record was accurate and complete, and his interpretation of the medical evidence was rational. Accordingly, so long as it was not the sole basis for his credibility determination, the ALJ was entitled to rely upon the lack of objective medical evidence to discount Plaintiff's subjective complaints. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Riebling v. Berryhill*, 2018 WL 1896528, at *14 (C.D. Cal. Apr. 19, 2018) (ALJ reasonably determined that relatively mild objective showing that claimant suffered from degenerative disc disease did not support claimant's testimony "that her back pain is so severe that even when taking narcotic pain medication, she must spend a significant part of each day lying down to manage her pain"). Here, the ALJ did not rely solely upon the lack of objective medical evidence, but provided additional reasons for discrediting Plaintiff's testimony.

**2. Plaintiff received limited and conservative treatment.**

In assessing Plaintiffs credibility, the ALJ found that Plaintiff's limited and conservative treatment did not support his allegations of disabling symptoms. The ALJ found Dr. Shah's recommendation of conservative treatment to be significant. As the ALJ explained, the absence of more aggressive treatment for both Plaintiff's knees and back suggested that his symptoms and limitations were not as severe as Plaintiff alleged. (AR 23-24.)

The record confirms the ALJ's characterization of the medical evidence. As

discussed, Dr. Shah examined Plaintiff, reviewed his MRI scans, and explicitly recommended conservative treatment consisting of a knee brace and Naprosyn, a non-narcotic pain reliever. (AR 258.) Plaintiff's primary care physician also treated Plaintiff's impairments with prescription medication, and recommended physical therapy, and weight management. The fact that Plaintiff's physician prescribed narcotic pain medication does not invalidate the ALJ's characterization of Plaintiff's treatment as conservative. Rather, courts have considered treatment to be fairly characterized as conservative even when a narcotic pain medication is paired with additional treatment such as epidural injections. *See Martin v. Colvin*, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods."); *Zaldana v. Colvin*, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (a treatment regimen including Tramadol, ibuprofen, and "multiple steroid injections" was "a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination because the record reflects that plaintiff was treated on the whole with conservative care for her foot pain with good results and improvement."); *see also Huizar v. Comm'r of Social Sec.*, 428 Fed. App'x 678, 680 (9th Cir. 2011) (noting that the claimant responded favorably to conservative treatment, which included "the use of narcotic/opiate pain medications").

Plaintiff argues that his treatment was not conservative because surgery was recommended for his knees. (ECF No. 20 at 12.) As support for this argument, Plaintiff points to his own testimony at the hearing. (AR 56.) He also cites a statement in the medical record in which Plaintiff's treating physician wrote: " – seen ortho – needs new knees – however not a candidate at this time due to age and weight." (AR 279.) This notation, however, appears to be based solely upon Plaintiff's

unsubstantiated self-report. Critically absent from the record is any evidence that Plaintiff's orthopedic surgeon, or any other physician, recommended surgery. Likewise, as discussed below, the record lacks any evidence demonstrating that Plaintiff underwent knee injections. The record also reflects relatively infrequent visits to the doctor, during which Plaintiff reported no negative side effects from medication, and the resulting treatment essentially consisting of medication refills. Thus, contrary to Plaintiff's contention, the record supports the ALJ's conclusion that Plaintiff received limited and conservative medical treatment, and the ALJ could properly rely on such in finding his subjective complaints lacked credibility. *See Miner v. Colvin*, 609 Fed. App'x 454, 455 (9th Cir. 2015) (ALJ properly relied upon conservative treatment to discount claimant's subjective complaints where "despite [claimant's] allegations that she suffered disabling pain for years, [claimant's] doctors did not recommend surgeries or other aggressive treatments."

### 3. Plaintiff failed to pursue available treatment.

In discounting Plaintiff's subjective complaints, the ALJ also relied upon evidence that Plaintiff refused knee injections and did not pursue physical therapy. The ALJ found that the evidence indicated that Plaintiff's treatment had been generally successful in controlling his symptoms. (AR 24.) As set forth above, the record confirms that physical therapy was recommended and approved by Plaintiff's health care plan, yet Plaintiff never attended physical therapy. Likewise, the record demonstrates that Plaintiff was offered knee injections, but declined them. (AR 258.) The ALJ could properly infer from the foregoing evidence that Plaintiff's symptoms were well controlled and not as severe as he alleged. *See Miner*, 609 Fed. App'x at 455 (ALJ properly relied on claimant's failure to pursue aggressive treatment to discount claimant's subjective complaints, stating that, "for instance, when surgery was discussed as one of several treatment options for allegedly disabling incontinence, [claimant] chose exercises."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively

with medication are not disabling."); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may consider failure to "seek treatment or to follow a prescribed course of treatment" in assessing credibility).

Plaintiff's contention that the ALJ misstated the record lacks merit. According to Plaintiff, although he initially declined the injections in January 2014, he "did eventually undergo the Synvisc injections before his visit to his primary care physician in August 2014, at which time he reported that the Synvisc injections have not helped his knee pain." (ECF No. 20 at 12.) In support of this assertion, Plaintiff refers to a medical record from Plaintiff's treating physician, which includes the following note: "–knee injections (synvisc have not helped)." (AR 279.) But this notation appears to be based upon nothing other than Plaintiff's self-report. Plaintiff does not point to anything in the medical record showing that he underwent a Synvisc injection, and the Court's review reveals no such evidence. To the contrary, the only orthopedic surgeon who examined Plaintiff indicated that Plaintiff declined injections.

## II. The ALJ properly considered Plaintiff's obesity.

The ALJ found that obesity was among Plaintiff's severe impairments. He stated that Plaintiff's "weight, including the impact on his ability to ambulate, as well as other body systems, has been considered within the functional limitations herein." (AR 22-23.) Plaintiff's severe obesity was explicitly part of the basis for the ALJ's assessment of Plaintiff's RFC. Plaintiff contends that despite these statements in the ALJ's decision, the ALJ failed to actually assess the impact of Plaintiff's obesity individually and in combination with his other impairments. (ECF No. 20 at 13-14.)

It is true that an ALJ must consider the interactive effect between the claimant's obesity and other conditions. *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003). Here, however, Plaintiff has not pointed to any evidence that his obesity caused additional functional limitations that the ALJ did not already consider. *See Burch,* 400 F.3d at 683 (ALJ properly considered claimant's obesity as related to

RFC where ALJ acknowledged physicians' notes regarding obesity and possible effects, and where claimant did not point to evidence of functional limitations resulting from obesity that the ALJ failed to consider); *Huerta v. Colvin*, 2014 WL 1092467, at *6 (C.D. Cal. Mar. 18, 2014) (rejecting claim that ALJ failed to adequately considered impact of obesity on claimant's RFC where plaintiff pointed to no evidence of an additional functional limitation attributable to obesity that the ALJ did not consider); *Bowhay v. Colvin*, 2013 WL 819794, at *11 (C.D. Cal. Mar. 5, 2013) (same); *Davis v. Astrue*, 2012 WL 3011223, at *13 (N.D. Cal. July 23, 2012) (ALJ did not err in evaluating obesity where plaintiff "failed to cite any medical evidence in the record from her various physicians that her obesity exacerbated her other impairments or functional limitations. Although Davis cites social security rulings for conditions and limitations that can be affected by obesity, Davis has not established that her obesity exacerbated her impairments or prevented her ability to work.").

### III. Any error in rejecting the opinions of the State agency physicians was harmless.

State agency physicians G. Lockie, M.D. and S. Garcia, M.D. both opined that as a result of knee osteoarthritis compounded by obesity, Plaintiff was limited to sedentary work. Specifically relevant to Plaintiff's claim, these physicians opined that Plaintiff could stand and/or walk for two hours in an eight-hour workday. (AR 62-65, 74-75, 83-86, 93-96.) The ALJ considered these opinions and afforded them "partial weight." However, the ALJ found that the stand and/or walk limitation "is too restrictive given the above-described medical evidence." (AR 24.)

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the State agency physicians' uncontroverted opinions about Plaintiff's limited ability to stand and/or walk. (ECF No. 20 at 15.)

An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244

(9th Cir. 1998). An ALJ errs when he "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-1013.

Here, the ALJ's boilerplate statement that the opinions were not supported by the medical evidence did not constitute a specific and legitimate reason for rejecting the uncontroverted opinions of the State agency physicians. To the contrary, the ALJ's reason was of the type that the Ninth Circuit has explicitly found legally inadequate. *See Embry v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required.... The ALJ must do more than offer than his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct."); *Castorena v. Berryhill*, 2017 WL 8186762, at *4 (C.D. Cal. Oct. 4, 2017) (ALJ's finding that state agency physician opinions were "not consistent with the record as a whole" was not a specific and legitimate reason for rejecting those opinions).

Nevertheless, the Commissioner is correct that this error was harmless. In finding Plaintiff was not disabled, the ALJ concluded that Plaintiff was able to perform his past relevant work. This conclusion was based upon the VE's testimony that Plaintiff could perform his past relevant work as security guard and telephone solicitor. As the VE testified, the occupation of telephone solicitor (DOT 299.357-014) is a sedentary job, both as generally and actually performed. (AR 25-26, 240-241.) Sedentary jobs require no more than two hours of standing/walking in an eight-hour workday. *See* SSR 96-9p; 1996 WL 374185. In addition, the ALJ's non-disability determination was based upon his alternative Step Five finding that Plaintiff was able to perform other sedentary jobs existing in significant numbers in

the national economy. Specifically, the ALJ adopted the VE's opinion that Plaintiff could perform the jobs of order clerk, food and beverage (DOT 209.567); lens inserter (DPT 713.687-026); and optical assembler (DOT 713.687-014), all of which are sedentary and which existed in significant numbers in the national economy. (AR 242.)

The jobs that the ALJ concluded Plaintiff could perform jobs were consistent with the State agency physicians' opinions that Plaintiff was limited to walking/standing for two hours in an eight-hour workday. Consequently, even giving full weight to the opinions of the State agency physicians, the ALJ's non-disability conclusion would be the same. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (error is harmless when inconsequential to the ultimate disability determination); *Christian v. Colvin*, 2016 WL 3568185, at *8 (C.D. Cal. June 29, 2016) (ALJ's error in RFC formulation and finding that claimant could do past relevant work was harmless where the ALJ made an alternative finding at step five of the sequential process that claimant could perform sedentary jobs in the national economy); *Warner v. Astrue*, 2009 WL 1255466, at *14 (D. Or. May 4, 2009) (even if ALJ erred in determining that claimant was capable of light level work, error was harmless because ALJ found a substantial number of jobs under step five that complied with sedentary limitation).

**IV. Any error in the hypothetical question was harmless.**

Plaintiff contends that the hypothetical question posed to the VE was erroneous because the ALJ failed to include all of the work-related limitations testified to by Plaintiff and assessed by the State agency physicians. (ECF No. 20 at 16-17.) Hypothetical questions posed to a vocational expert must include an accurate, detailed description of all of the claimant's limitations. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).

To the extent Plaintiff contends that the hypothetical should have included additional functional restrictions based upon Plaintiff's allegations of pain and

limitations, his claim fails because the ALJ properly rejected Plaintiff's subjective complaints. To the extent Plaintiff contends that the ALJ should have included a limitation of two hours of walking/standing in an eight-hour day based upon the State agency physicians' opinion, his claim fails because the failure to include this limitation was harmless. As discussed above, the ALJ's decision makes clear that Plaintiff was able to perform several different sedentary jobs existing in significant numbers in the national economy, and therefore, those jobs were consistent with the State agency physicians' opinions restricting Plaintiff to two hours of standing and/or walking in an eight-hour workday.

**************

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 10/17/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE